O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT E. POMBRIO, | ) NO. CV 10-5604-GHK (MAN) |
| Plaintiff, | ) MEMORANDUM AND ORDER DISMISSING |
| v. | ) FIRST AMENDED COMPLAINT WITH LEAVE |
| MAYOR A. VILLARAIGOSA, et al., | ) TO AMEND |
| Defendants. | ) |

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a civil complaint on August 16, 2010 ("Complaint"). On August 20, 2010, plaintiff filed a First Amended Complaint. Plaintiff also filed a request for a temporary restraining order and a preliminary injunction, which United States District Judge George H. King denied on September 8, 2010.

Congress has mandated that courts perform an initial screening of *in forma pauperis* civil actions. This Court may dismiss such an action before service of process if it concludes that the complaint is frivolous, fails to state a claim upon which relief can be granted, or

seeks relief against a defendant who is immune from the requested relief.  28 U.S.C. § 1915(e)(2).  In screening such a complaint, the Court must construe the allegations of the complaint liberally and afford the plaintiff the benefit of any doubt.  *See* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  A *pro se* litigant must be given leave to amend his or her complaint, unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff alleges that he has a disability within the meaning of the Americans with Disabilities Act of 1990 ("ADA").  Specifically, he alleges that he is mobility-impaired as a result of three assaults, and he also suffers from inguinal hernias and has a severely impaired right arm. (First Amended Complaint ¶ 9.)  The named defendants are Los Angeles Mayor Antonio Villaraigosa and the "City-County of Los Angeles."[1]  (*Id.* at 1.)

Plaintiff alleges a denial of access to the Los Angeles County Law Library ("Law Library") and the Los Angeles Public Library, Main Branch ("Main Library") (collectively "Libraries"). (First Amended Complaint ¶¶ 5, 8.)  Plaintiff alleges that the Libraries are owned and operated by the "City and County of Los Angeles." (*Id.* at ¶ 5.)  In fact, the

---

[1] There is no entity called the "City-County of Los Angeles."  The City of Los Angeles and the County of Los Angeles are two separate governmental entities and must be sued as separate defendants.

2

Law Library is owned and operated by the County of Los Angeles ("County"), and the Main Library is owned and operated by the City of Los Angeles ("City").

The First Amended Complaint alleges a single cause of action. (First Amended Complaint at pp. 7-9.) Plaintiff contends that defendants violated the ADA by implementing and enforcing a policy prohibiting library users from: bringing bags containing their personal possessions into the Libraries; "checking" such bags and possessions; or leaving such bags and possessions on outside patios. (First Amended Complaint ¶ 8.) Plaintiff alleges that these policies prevent him from using the Libraries, because it causes him pain to walk up and down hills between the Libraries and a place where he can store his bags. (*Id.*)

On July 28, 2010, plaintiff visited the Law library to work on a motion, and supervisor J. Doe told him that he could not enter with his bag. (First Amended Complaint ¶ 10.) Plaintiff offered to leave the bag on the patio, but J. Doe said that the bag would be thrown out. (*Id.*) Plaintiff inquired, to no avail, about his rights as a "homeless disadvantaged person." (*Id.*)

On July 31, 2010, plaintiff visited the Main Library to use the restroom, and J. Doe 2 told him that no bags were allowed in the library. (First Amended Complaint ¶ 10.) Plaintiff also describes an earlier incident when he was denied access to the Main Library grounds. On July 24, 2010, at about 8:30 p.m., plaintiff entered the grounds of the Main Library to fill his water bottle at the fountain. (*Id.*) There

3

was a private party at a restaurant on the grounds.  (*Id.*)  Three security guards forced plaintiff to leave by a stairway, despite his protestations that he was mobility-impaired and could not use stairs, and plaintiff sprained his foot.  (*Id.*)  A fourth guard refilled plaintiff's water bottle for him.  (*Id.*)

Plaintiff contends that the policy prohibiting library patrons from taking bags to the library has prevented him from accessing the Libraries "without undue loss of time or increased pain."  (First Amended Complaint ¶ 22.)  Plaintiff also contends that the policy is being enforced in a discriminatory manner.  He contends that, on August 10, 2010, he saw a patron sitting at a Law Library table, and underneath the table was an open leather satchel containing a mid-sized dog.  (*Id.* at ¶ 24.)

Although the "Jurisdiction and Venue" section of the First Amended Complaint states that "[t]his is an action for declaratory and injunctive relief and damages," the First Amended Complaint does not contain a prayer for relief.  In fact, the text of the pleading ends in the middle of an incomplete sentence, followed by a date and signature.  (*See* First Amended Complaint at p. 9, ll. 27-28.)

**DISCUSSION**

**I.   PLAINTIFF SHOULD CLARIFY WHETHER HE IS ASSERTING A SECTION 1983 CLAIM.**

In his original Complaint, plaintiff asserted two claims:  an ADA

4

claim; and a Section 1983 claim asserting a violation of the Due Process Clause. In the First Amended Complaint, however, plaintiff alleges a single "cause of action", which he states is based on a "violation of the ADA," and he expressly describes his federal claims as arising under the ADA. (First Amended Complaint at ¶ 1 and p. 7, l. 5.) Thus, it would appear that plaintiff is now asserting solely an ADA claim and is *not* asserting a Section 1983 claim.

The Court, notes, however, that plaintiff has included the notation "42 U.S.C. § 1983" at the top of pages 5 through 9 of the First Amended Complaint. Thus, plaintiff may have intended to assert a Section 1983 claim in the First Amended Complaint, although he has not done so.

If plaintiff intends to assert a Section 1983 claim as well as his ADA claim, he should clearly specify the nature of his civil rights claim in his Second Amended Complaint, as well as include allegations to support it. If plaintiff intends to assert solely an ADA claim, he should omit references to Section 1983 in the Second Amended Complaint.

II.  **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADA.**

   A.   **Plaintiff Cannot Assert A Claim Against Defendants Under Title III.**

Plaintiff asserts claims under both Title II and Title III of the ADA. (First Amended Complaint ¶¶ 1, 6, 7.)

Title II of the ADA provides that "no qualified individual with a

1 disability shall, by reason of such disability, be excluded from
2 participation in or be denied the benefits of the services, programs,
3 or activities of a public entity, or be subjected to discrimination by
4 any such entity." 42 U.S.C. § 12132. A "qualified individual with a
5 disability" is defined as "an individual with a disability who, with or
6 without reasonable modifications to rules, policies, or practices, the
7 removal of architectural, communication, or transportation barriers, or
8 the provision of auxiliary aids and services, meets the essential
9 eligibility requirements for the receipt of services or the
10 participation in programs or activities provided by a public entity."
11 § 12131(2). "Public entity" is defined to include "any State or local
12 government" and "any department, agency, special purpose district, or
13 other instrumentality of a State or States or local government." 42
14 U.S.C. § 12131(1).

16     Title III provides that: "No individual shall be discriminated
17 against on the basis of disability in the full and equal enjoyment of
18 the goods, services, facilities, privileges, advantages, or
19 accommodations of any place of public accommodation by any person who
20 owns, leases (or leases to), or operates a place of public
21 accommodation." 42 U.S.C. § 12182(a). Under the rubric "public
22 accommodation," the statute lists "private entities [that] are
23 considered public accommodations for purposes of [Title III], if the
24 operations of such entities affect commerce." 42 U.S.C. § 12181(7).
25 These private entities include "a museum, library, gallery, or other
26 place of public display or collection." 42 U.S.C. § 12181(7)(H).

28     Here, plaintiff alleges denial of access to the Main Library, owned

6

and operated by the City of Los Angeles, and the Law Library, owned and operated by the County of Los Angeles. (First Amended Complaint ¶¶ 5, 8.) The City and County are local governmental entities and, thus, are "public entities" under the ADA. 42 U.S.C. § 12131(1). "ADA Title III expressly does not apply to public entities, including local governments." <u>Bloom v. Bexar County, Tex.</u>, 130 F.3d 722, 726 (5th Cir. 1997). "Title III of the ADA applies to private entities providing public accommodations . . . not to public entities." <u>DeBord v. Board of Educ. of the Ferguson-Florissant School Dist.</u>, 126 F.3d 1102, 1106 (8th Cir. 1997)(declaring that "[e]ntities subject to Title III include private schools, but not public ones"); *see also* <u>Sandison v. Michigan High School Athletic Ass'n</u>, 64 F.3d 1026, 1036 (6th Cir. 1995) (declaring that "[p]ublic school grounds and public parks are of course operated by public entities, and thus cannot constitute public accommodations under Title III"); <u>Falchenberg v. New York State Dept. of Educ.</u>, 642 F. Supp. 2d 156, 166 (S.D.N.Y. 2008)("Title III is not applicable to public entities."); <u>Crowder v. Kitagawa</u>, 842 F. Supp. 1257, 1267 (D. Haw. 1994)("The definition of 'private entity' in 42 U.S.C. § 12181(6) specifically excludes any public entity such as the State of Hawaii. Accordingly, neither Title III of the ADA nor its regulations concerning service animals apply to the Hawaii quarantine system."), *rev'd on other grounds,* 81 F.3d 1480 (9th Cir. 1996) (reversal based on analysis of ADA Title II). While Title III applies to claims against private entities operating facilities owned by public entities, *see* <u>Disabled Rights Action Committee v. Las Vegas Events, Inc.</u>, 375 F.3d 861, 874-77 (9th Cir. 2004), such is not the case here.

Accordingly, Title III does not apply to plaintiff's claims against

1  the City, the County, and Mayor Villaraigosa. Plaintiff's ADA claim
2  arises solely under Title II.

### B. Plaintiff Fails To State A Claim Under Title II

To state a claim under Title II of the ADA, plaintiff must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) the exclusion, denial of benefits, or discrimination occurred by reason of his disability. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Section 12132 prohibits both outright discrimination against individuals with disabilities and forms of discrimination, including facially neutral laws, that deny disabled persons meaningful access to public services. Crowder v. Kitagawa, 81 F.3d 1480, 1483-84 (9th Cir. 1996)(Hawaii's facially neutral 120-day quarantine for all carnivorous animals entering Hawaii disproportionately burdened visually-impaired persons, because of their unique dependence on guide dogs, and thereby denied them meaningful access to state services); see McGary, 386 F.3d at 1265 ("We have repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.").

The plaintiff in McGary alleged that the City of Portland's nuisance abatement policy "burdened him in a manner different from and greater than it burdened non-disabled residents, solely as a result of his disabling condition." McGary, 386 F.3d at 1265. Specifically, the plaintiff alleged that the city refused to grant him additional time to clean up his yard to comply with the nuisance abatement ordinance, and he was unable to do it in the allotted time, because he was physically impaired and hospitalized with meningitis. *Id.* The Ninth Circuit held that plaintiff's allegations were sufficient to allege that he was discriminated against "by reason of" his disability. *Id.* at 1268

Here, any burden plaintiff experience based on the Libraries' "no bags" policies was not because of his disability, but rather, because he had bags and no place to leave them.[2] Plaintiff's disability is implicated only because it made it painful for him to walk to a place where he was able to leave his bags. There are no allegations suggesting that disabled persons are more likely to carry bags to the Libraries or that the "no bags" policy imposes a greater burden on disabled persons. The discriminatory conduct described by plaintiff -- enforcing the "no bags" rule against him while another patron was able to enter the library with a bag containing a dog -- had nothing to do with plaintiff's disability. Plaintiff's allegations, liberally construed, simply do not give rise to an inference that the "no bags" policy burdens his access to the Libraries "by reason of" his disability, as required to state a Title II claim. *See* Simmons, 609

---

[2] If plaintiff was unduly burdened by the "no bag" policies, it was because of his homelessness, not his disability.

9

F.3d at 1021 (plaintiff's exclusion from outdoor recreation after he was placed on suicide watch was due to policies restricting activities of inmates on suicide watch and, thus, was not "by reason of" his depression for purposes of an ADA claim). Plaintiff, therefore, has not alleged an essential element of a Title II ADA claim.

Accordingly, plaintiff's ADA claim must be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MAYOR VILLARAIGOSA.

The sole individual defendant named in the First Amended Complaint is Los Angeles Mayor A. Villaraigosa. Plaintiff does not specify whether he is suing Mayor Villaraigosa in his official or individual capacity. As previously discussed, plaintiff has only asserted an ADA claim in the First Amended Complaint, and that claim arises under Title II of the ADA.

"[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity." Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Title II does not provide for suit against a public official acting in his individual capacity. *Id.*; Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999). Thus, "individuals are not proper defendants under Title II of the ADA." Colbert v. Yamamoto, 2005 WL 3080921, at *1 (E.D. Cal. 2005); Thomas v. Mar, 2010 WL 2954131, at *5 (D. Nev., July 23, 2010)(same). Accordingly, Plaintiff's ADA claim against Mayor Villaraigosa, in his individual capacity, must be dismissed.

10

Plaintiff may pursue an ADA claim against Mayor Villaraigosa in his official capacity, because an official capacity suit against a municipal officer is equivalent to a suit against the entity. Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff's Dep't, 533 F.3d 780, 799 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 903 (2009); *see also* Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct, 3099, 3105 (1985). Plaintiff, however, has also sued the City. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Center for Bio-Ethical Reform, 533 F.3d at 799. Plaintiff's official capacity ADA claim against Mayor Villaraigosa, therefore, is duplicative of plaintiff's ADA claim against the City, and it is subject to dismissal for that reason.

**IV.   PLAINTIFF FAILS TO INCLUDE A PRAYER FOR RELIEF**.

Each complaint filed in federal court must contain a prayer for relief. Federal Rules of Civil Procedure, Rule 8(a)(3). Plaintiff's First Amended Complaint does not specify the relief he seeks. If plaintiff files a Second Amended Complaint, he must rectify this defect.

**CONCLUSION**

For the foregoing reasons, the First Amended Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a Second Amended Complaint that attempts to cure the defects in the Second Amended Complaint described herein. The

Second Amended Complaint, if any, shall be complete in itself. It shall not refer in any manner to the original Complaint or the First Amended Complaint. **Plaintiff may not add new claims or new defendants without obtaining prior leave of court. Fed. R. Civ. P. 15(a)**

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: October 15, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE